UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
COURT FILE NO.:

| | |
|---|---|
| Christopher Schmidt,<br><br>        Plaintiff,<br>v.<br><br>Citibank N.A.,<br><br>        Defendant. | **COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. This action arises out of Defendant Citibank N.A.'s violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA").

## JURISDICTION

2. Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681.

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the conduct at issue occurred in this District, Plaintiff resides in this District, and Defendant conducts business in this District. See *Ford Motor Co. vs. Montana Eighth Judicial District Court,* 2021 WL 1132515 (U.S. March 25, 2021).

## PARTIES

4. Plaintiff, Christopher Schmidt (hereinafter "Plaintiff"), is a natural person who resides in the City of Mandan, County of Morton, State of North Dakota, and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

1

5. Defendant Citibank N.A. (hereinafter "Defendant") is a national bank that conducts business in the State of North Dakota. Defendant has a principal place of business located at 388 Greenwich St, New York, New York 10013. The defendant is a "person" as defined in 15 U.S.C. § 1681a(b) and a "furnisher" of consumer information pursuant to 15 U.S.C. § 1681s-2(b).

## PURPOSE OF THE FAIR CREDIT REPORTING ACT

6. Consumer credit plays a major role in the lives of American consumers entering the American marketplace and the economic system in general.  Fair and accurate credit reporting acts as a gatekeeper to credit purchases, employment and income, basic commercial services, insurance coverage, housing rentals, and a broad range of other transactions.  Robert J. Hobbs & Stephen Gardner, THE PRACTICE OF CONSUMER LAW 39-40 (2nd ed. 2006).

7. Congress investigated and determined that the banking system is dependent upon fair and accurate reporting, that inaccurate credit reports directly impair the efficiency of the banking system, and that unfair credit reporting methods undermine public confidence, which is essential to the continued functioning of the banking system.  15 U.S.C. § 1681(a)(1).

8. The FCRA was created to "ensure fair and accurate credit reporting, promote efficiency, and protect consumer privacy." *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 52 (2007).

9. The FCRA was proposed in 1968 as an amendment to the original Truth in Lending Act.  Senator Proxmire (D-WI) announced his intention to create legislation

addressing the growing frequency of cases in which a consumer "is unjustly denied because of *faults or incomplete information in a credit report*," and entered an initial draft of what would eventually become the FCRA into the Congressional Record. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 114 Cong. Rec. 24904 (Aug. 2, 1968)) (emphasis added).

10. Senator Proxmire listed five types of abuses requiring Congressional response, including biased or one-sided information and incomplete information. Anthony Rodriguez et al., FAIR CREDIT REPORTING 8 (5th ed. 2002) (citing 115 Cong. Rec. 2411 (Jan. 31, 1969)).

11. Congress considered inaccurate and misleading information to be the most serious problem. Anthony Rodriguez et al., FAIR CREDIT REPORTING 10 (5th ed. 2002).

12. The FCRA applies to situations in which information relevant to a consumer's "credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living" is collected. Anthony Rodriguez et al., FAIR CREDIT REPORTING 5 (5th ed. 2002) (citing 15 U.S.C. § 1681a(d)).

13. An inaccurate or misleading credit report can not only significantly and unfairly lower a consumer's creditworthiness but can also prevent consumers from full access to the American marketplace and negatively impact a consumer's living standard and general reputation on the whole if a consumer's character and mode of living is not accurately portrayed. Congress enacted the FCRA to prevent this arbitrary and iniquitous result.

14. Furthermore, in 1996, Congress, in an effort to increase the "accuracy and integrity" of information supplied to credit reporting agencies, added 15 U.S.C. § 1681s-2 to the FCRA by passing the Consumer Credit Reform Act.  The provision, "[r]esponsibilities of furnishers of information to consumer reporting agencies," subjected data furnishers, who were not previously covered by the FCRA, to requirements related to accuracy and the handling of consumer disputes.  These provisions were originally scheduled to sunset in 2003 but were considered important enough to Congress to be made permanent in the Fair and Accurate Credit Transactions Act of 2003.  Federal Trade Commission Staff: 40 Years of Experience with the Fair Credit Reporting Act, pp. 1, 2, 92.  Retrieved from the FTC website: http://www.ftc.gov/os/2011/07/110720fcrareport.pdf.

15. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes.  *See* 15 U.S.C. § 1681i(a)(5)(D).

16. Consumer reporting agencies Equifax, Experian, Trans Union, and Innovis have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance.  e-OSCAR allows data furnishers to create and respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers.  e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

17. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro II." It is also known industry-wide as the CDIA's "Credit Reporting Resource Guide."

18. Metro II is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

19. Metro II codes are used on an industry-wide form known within the credit industry as an Automated Credit Dispute Verification ("ACDV") electronic form.

20. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and credit reporting agencies.

21. These ACDV "fields" have various titles for the many substantive areas into which the Metro II codes can be entered.

## FACTUAL ALLEGATIONS

22. In or about 2015, Plaintiff opened a Best Buy ("Best Buy") credit card with Defendant. Account number ending in 7521.

23. Plaintiff made monthly on-time payments to Defendant.

24. Then sometime in or about August 14, 2022, Plaintiff paid off the credit card with a cashier's check number 417563 made payable to Best Buy in the amount of $2,371.10.

25. Defendant accepted the payment and deposited the check on August 16, 2022.

26. Defendant never returned the funds to Plaintiff.

27. At no time was Plaintiff late on his obligation to Defendant.

28. For some unknown reason Defendant internally reversed the payment causing the account to go into late status.

29. Defendant without notice or warning to Plaintiff began reporting this account to the national credit reporting agencies as delinquent and past due.

30. In December 2022, Plaintiff learned of the account being reported as having a negative status of the account and contacted Defendant directly to dispute the balance and late payment status as the account was paid in full in August of 2022.

31. Defendant has acknowledged that it received Plaintiff's payment in August 2022 and could not explain the online records of the account showed the payment being reversed.

32. Defendant has repeatedly failed to update their reporting of the account as disputed to the credit reporting agencies or suppressing any of the reporting of the account.

33. Despite numerous telephone calls and direct disputes being submitted to Defendant in December 2022, it did not take reasonable steps to investigate Plaintiff's claims of fraud or misconduct.

34. Plaintiff has spent numerous hours attempting to correct this egregious breach of fiduciary duty and credit reporting error by Defendant.

35. Finally after he had exhausted all attempts to communicate with Defendant directly, on or about December 2022, Plaintiff submitted an online dispute to the national credit reporting agency, Trans Union (hereinafter "TU"), pursuant to 15 U.S.C. §

1681i, stating, in relevant part, that the account identified herein was misreporting that Plaintiff's account was due and owing, past due and that the account had an outstanding balance.

36. Plaintiff submitted his online dispute and the proof of the payment in full was attached.

37. TU then communicated Plaintiff's disputes to Defendant in automated consumer dispute verification ("ACDV") forms, in apparent accordance with 15 U.S.C. § 1681i(a)(2).

38. Defendant failed to conduct a reasonable investigation into Plaintiff's dispute, failed to review all relevant information available to it, and failed to update and/or remove the inaccurate account history, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Code) to "XB," and, instead, incorrectly verified to TU that Plaintiff's account was being reported correctly, in violation of 15 U.S.C. § 1681s-2(b).

39. Defendant erroneously responded that Plaintiff's account was still open with an outstanding balance and had been past due.

40. Plaintiff has suffered extreme emotional distress, anxiety, depression, despair, loss of sleep, loss of time, nausea, headaches, and mental anguish as he made a payment for the entire balance owed in August of 2022, and yet it is impacting his overall credit profile and his ability to obtain credit (i.e. his debt to income ratio).

41. Plaintiff has also incurred out-of-pocket loss because of Defendant's inaccurate credit reporting in the form of postage, loss of time spent communicating with

Defendant in excess of ten (10) hours, and payment of attorney's fees and costs incurred to assist him in the present case.

## PLAINTIFF'S DAMAGES

43. As a result of Defendant's inaccurate furnishing/reporting, Plaintiff has suffered out-of-pocket loss, reduced credit score and profile, emotional distress, frustration, and anxiety constituting actual damages pursuant to 15 U.S.C. § 1681o(a)(1) and § 1681n.

44. Plaintiff is entitled to attorney's fees and costs from Defendant pursuant to 15 U.S.C. § 1681o(a)(2) and § 1681n.

## RESPONDEAT SUPERIOR LIABILITY

45. The acts and omissions of employees and other agents of Defendant who communicated with Plaintiff and/or with the CRAs were committed within the time and space limits of their agency relationship with their principal, Defendant.

46. The acts and omissions by these agents were incidental to, or of the same general nature as, the responsibilities these agents were authorized to perform by Defendant.

47. By committing these acts and omissions against Plaintiff, these agents were motivated to benefit their principal, Defendant.

48. Defendant is therefore liable to Plaintiff through the Doctrine of Respondeat Superior for the intentional and negligent acts, errors, and omissions done in violation of federal law by its agents, including but not limited to violations of the FCRA.

## STANDING

49. Standing is proper under Article III of the Constitution of the United States of America because Plaintiff's claims state:

    a. a valid injury in fact;

    b. which is traceable to the conduct of Defendant; and

    c. and is likely to be redressed by a favorable judicial decision.

*See Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1547 (2016), and *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).

50. In order to meet the standard laid out in *Spokeo* and *Lujan*, Plaintiff must clearly allege facts demonstrating all three prongs above.

### *The "Injury in Fact" Prong*

51. Plaintiff's injury in fact must be both "concrete" and "particularized" in order to satisfy the requirements of Article III of the Constitution, as laid out in *Spokeo*. *Id.*

52. For an injury to be "concrete" it must be a *de facto* injury, meaning that it actually exists. In the present case, Defendant's actions negatively impacted Plaintiff's credit.

53. For an injury to be "particularized" means that the injury must "affect the plaintiff in a personal and individual way." *Spokeo*, 136 S. Ct. at 1548. In the instant case, Plaintiff personally suffered worse credit and emotional distress.

*The "Traceable to the Conduct of Defendant's Prong*

54. The second prong required to establish standing at the pleadings phase is that Plaintiff must allege facts to show that Plaintiff's injury is traceable to the conduct of Defendant.

55. In the instant case, this prong is met simply by the facts that the violative conduct contemplated in this Complaint was initiated by Defendant directly, or by Defendant's agents at the direction of Defendant.

*The "Injury is Likely to be Redressed by a Favorable Judicial Opinion" Prong*

56. The third prong to establish standing at the pleadings phase requires Plaintiff to allege facts to show that the injury is likely to be redressed by a favorable judicial opinion.

57. In the present case, Plaintiff's Prayers for Relief include a request for statutory and actual damages. The damages were set by Congress and specifically redress the financial damages suffered by Plaintiff.

58. Furthermore, the award of monetary damages redress the injuries of the past, and prevents further injury by Defendant in the future.

59. Because all standing requirements of Article III of the U.S. Constitution have been met, as laid out in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016), Plaintiff has standing to sue Defendant on the stated claims.

## **TRIAL BY JURY**

60. Plaintiff is entitled to and hereby demands a trial by jury. U.S. Const. amend. VII; Fed. R. Civ. P. 38.

## CAUSE OF ACTION

### COUNT I.

### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT – 15 U.S.C. § 1681 *et seq*.

61. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

62. Defendant violated 15 U.S.C. § 1681s-2(b) by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it and documentation provided by Plaintiff, and failing to update and/or remove the inaccurate tradeline or, in the alternative, to report the account as "disputed" by changing the Metro II CCC (Compliance Condition Codes) Code to "XB."

63. As a result of Defendant's violations of the FCRA, Plaintiff has suffered actual damages not limited to the detriment to his credit rating, out-of-pocket loss, emotional distress, embarrassment, mental anguish, and anxiety in an amount to be determined at trial.

64. Defendant's conduct, actions, and inactions were willful, rendering it liable for damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

65. Alternatively, Defendant's violations were negligent, rendering it liable for damages under 15 U.S.C. § 1681o.

66.   Plaintiff is entitled to recover actual damages, statutory damages, and costs and attorneys' fees from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. §§ 1681n and 1681o.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays that judgment to be entered against Defendant for:

- an award of actual and statutory damages against Defendant for its violations of the FCRA pursuant to 15 U.S.C. §§ 1681n and 1681o;
- an award of punitive damages against Defendant for its willful noncompliance with the FCRA pursuant to 15 U.S.C. § 1681n;
- an award of costs and attorney's fees against Defendant pursuant to 15 U.S.C. §§ 1681n and 1681o; and
- such other and further relief as the Court may deem just and proper.

Dated: February 6, 2023               Respectfully submitted,

By: s/Thomas J Lyons Jr.

Thomas J. Lyons, Jr., Esq.
MN Attorney I.D. #: 249646
**CONSUMER JUSTICE CENTER, P.A.**
367 Commerce Court
Vadnais Heights, MN 55127
Telephone: (651) 770-9707
tommy@consumerjusticecenter.com

***ATTORNEY FOR PLAINTIFF***

## DECLARATION OF COMPLAINT AND CERTIFICATION BY PLAINTIFF

I, Christopher Schmidt, declare under penalty of perjury, as provided for by the laws of the United States, 28 U.S.C. § 1746, that the following statements are true and correct:

1. I am the Plaintiff in this civil proceeding.

2. I have read the above-entitled civil Complaint prepared by my attorneys and I believe that all of the facts contained in it are true, to the best of my knowledge, information, and belief, formed after reasonable inquiry.

3. I believe that this civil Complaint is well grounded in fact and warranted by existing law or by a good faith argument for the extension, modification, or reversal of existing law.

4. I believe that this civil Complaint is not interposed for any improper purpose, such as to harass Defendant, cause unnecessary delay to Defendant, or create a needless increase in the cost of litigation to Defendant named in the Complaint.

5. I have filed this civil Complaint in good faith and solely for the purposes set forth in it.

Dated this <u>31st</u> day of January 2023.

<u>s/Christopher Schmidt</u>
Christopher Schmidt
